IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TIG INSURANCE COMPANY, :
:
    Plaintiff, :
:
v. :
:
UNIVERSAL WRESTLING CORP., :
INC. f/k/a WORLD CHAMPIONSHIP :
WRESTLING, INC., TURNER :
SPORTS, INC., TURNER :
ENTERTAINMENT GROUP, INC, :
SIDNEY R. EUDY, and JOHNNY :
LAURINAITIS, :
:
    Defendants. :

CIVIL ACTION FILE
NO. 1:03-CV-2096-HTW

**FILED IN CLERK'S OFFICE**
U.S.D.C. Atlanta

**JAN 2 2 2004**

LUTHER D. THOMAS, Clerk
By: Deputy Clerk

## PLAINTIFF'S BRIEF IN OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS UNIVERSAL WRESTLING CORP. INC. f/k/a WORLD CHAMPIONSHIP WRESTLING, INC., TURNER SPORTS, INC., TURNER ENTERTAINMENT GROUP, INC. AND JOHNNY LAURINAITIS

COMES NOW TIG Insurance Company ("TIG"), and files and serves this brief opposing the motion to dismiss filed by Universal Wrestling Corp. Inc. f/k/a World Championship Wrestling, Inc., Turner Sports, Inc., Turner Entertainment Group, Inc. (hereinafter referred to collectively as "Turner") and Johnny Laurinaitis, showing the Court as follows:

### I.   STATEMENT OF FACTS

This action for declaratory judgment seeks to determine what, if any, coverage obligations TIG owes to Laurinaitis and Turner stemming from an insurance policy issued to Universal Wrestling Corporation for a lawsuit brought by Sidney Eudy ("Eudy").

Pursuant to an employment agreement, Eudy wrestled professionally for World Championship Wrestling, Inc., now known as Universal Wrestling Corporation (UWC). (Complaint). On January 14, 2001, Eudy injured his left leg during a WCW wrestling match. (Complaint). At the time of the injury, WCW was a division of Turner Sports, Inc, which was a division of Turner Entertainment Group, Inc. (Complaint). Eudy filed a lawsuit in the Superior Court of Fulton Court against Turner seeking to recover under common law theories for the injuries he allegedly received on January 14, 2001. (Complaint).

Turner tendered Eudy's complaint to TIG for coverage pursuant to the TIG policy. (Complaint, ¶ 25). After reviewing Eudy's initial complaint, TIG denied coverage because Eudy was not seeking damages covered by the terms of the policy. (Complaint, ¶ 26).

Eudy subsequently filed a second amended complaint that asserted additional claims and added Johnny Laurinaitis, a UWC employee, as a defendant and Turner and Laurinaitis again tendered the case TIG for coverage. (Complaint, ¶ 27). After TIG reviewed the amended allegations, Turner and Laurinaitis entered into a reservation of rights contract. As partial consideration for TIG's defense, Turner and Laurinaitis agreed that TIG would have a:

> right to file a declaratory judgment to
> determine its coverage obligations, including
> but not limited to the question of Eudy's
> status as an employee of WCW.

(Reservation of Rights Agreement attached hereto as Exhibit "A").

Pursuant to that agreement, TIG then filed its complaint for declaratory judgment with this Court on July 24, 2003, to determine its obligations to defend and/or indemnify Laurinaitis and Turner against Eudy's lawsuit. TIG questions whether coverage exists because of provisions in its policy that exclude coverage for bodily injury to employees and deny insured status to employees who injure co-employees.

After TIG filed the coverage lawsuit as agreed to by all the parties, Turner and Laurinaitis answered the complaint and attempted to withdraw their request for coverage **without prejudice.** (Answer, Third Affirmative Defense). TIG then agreed to dismiss the declaratory judgment action provided Laurinaitis and Turner would agree to withdraw their claim **with** prejudice, which would include indemnity for a claim by Eudy to collect against the policy. (See November 18, 2003 correspondence attached hereto as Exhibit B). Laurinaitis and Turner refused to comply, thereby necessitating the continuation of the present action.

As a result of their abject refusal to indemnify TIG against a claim by Eudy, Turner and Laurinaitis themselves have

reinforced this Court's jurisdiction, requiring the continuation of this action for the legal reasons stated below.

## II.   ARGUMENT AND CITATIONS TO AUTHORITY

Title 28 U.S.C. § 2201 empowers district courts to issue declaratory judgments in cases over which they have jurisdiction, in which there is a case or controversy.  For a controversy to exist, the facts alleged must show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  Maryland Casualty Company v. Pacific Coal & Oil Company, 312 U.S. 270, 61 S.Ct. 510 (1941); Atlanta Gas Light Co. v. Aetna Casualty and Surety Co., 68 F.3d 409 (11th Cir. 1995).  As provided below, "case or controversy" jurisdiction exists in this case.

### A.   Contract Basis for Jurisdiction

Reservation of rights agreements are contracts that are interpreted to enforce the intent of the parties.  Technically, the reservation of rights is a bilateral agreement in the sense that the insured agrees to the terms of the qualified defense being offered by the insurer.  The insurer may provide the notice unilaterally by letter, and its terms are deemed accepted unless the insured expressly objects thereto.  See Jacore Systems, Inc. v. Central Mutual Insurance Co., 194 Ga. App. 512, 390 S.E.2d 867 (1990).  As in this case, if the insured accepts

4

the reservation of rights, the issue of coverage can be litigated at a later time pursuant to the terms of the agreement. Id.

There is a strong policy reason for insurers to include their right to litigate a coverage dispute in a reservation of rights agreement. In the absence of such an agreement, the insured could effectively remove the insurer's ability to control the defense of an action without foreclosing the possibility of liability against the insurer after a judgment is entered. Indeed, insureds, when faced with the possibility of unfavorable facts emerging in a declaratory judgment action, could ostensible withdraw their request for a defense, fail to satisfy the resulting judgment and stand back and watch while the claimant pursues its rights against the insurer. See Smith v. GEICO, 179 Ga. App. 654, 655, 347 S.E.2d 245, 246 (1986). The relevant case law prevents such an outcome.

In the present case, TIG, Laurinaitis and Turner entered into such a contract that provided TIG would defend the underlying action as consideration for retaining its right to file a declaratory judgment action to determine coverage. (Exhibit A). Simply put, the Court is now being asked by Turner and Laurinaitis to unilaterally invalidate that contract. The terms of that agreement, however, are unambiguous and clearly

contemplated the instant lawsuit. In such cases, the Court should look to the contract to determine the parties' intentions. See Nationwide Mutual Fire Insurance Company v. Somers, 2003 WL 22846099 (December 1, 2003, Ga. App.)(when the terms of a written contract are clear and unambiguous, the court is to look to the contract alone to find the parties' intent); Eckerd Corporation v. Alterman Properties, Ltd., -- Ga. App. --, 589 S.E.2d 660 (2003)(if contract language is unambiguous, court enforces the contract's clear terms).

In disregard for the foregoing case law and the reservation of rights contract, Turner and Laurinaitis are attempting to opt in and out of their request for coverage to TIG in an effort to control when and to what extent TIG may invoke this Court's declaratory judgment jurisdiction. As the above law makes clear, however, jurisdiction remains in this action and this Court should enforce the terms of the reservation of rights agreement and resolve the issue of coverage.

In an analogous situation, specifically Turner's and Laurinaitis' actions in attempting to effectively cancel the TIG policy with respect to this one claim, has been examined by the Georgia Court of Appeals. In Harleysville-Atlantic Insurance Company v. Queen, 250 Ga. App. 382, 552 S.E.2d 436 (2002) the insured attempted to retroactively cancel a policy of insurance

6

after a claimant was injured and sought not to pursue coverage after a reservation of rights letter was sent by the insurer. Id. The court held, however, that "there can be no mutual cancellation where a prior loss exists[.]" The court noted that "[r]ights against an insurer arise immediately upon the happening of the accident and cannot be destroyed by attempted subsequent cancellation, release or compromise by the insured and insurer." Id. quoting State Farm Mutual Automobile Insurance Company v. Kendall, 104 Ga. App. 481, 485, 122 S.E.2d 139 (1961). As the above cases make clear, Turner and Laurinaitis cannot essentially breach their contract with TIG to avoid coverage because the injured party, Eudy, may have already acquired rights against the policy.

**B.   Case or Controversy Exists Between TIG and Eudy**

Another basis for this Court's jurisdiction can be found in the Maryland Casualty opinion (a case the Turner Defendants and Laurinaitis cite to on page 9 of their brief), where the Supreme Court held that an insurer's complaint for a declaratory judgment presented an "actual controversy," **not only** with the insured, but also with the injured person, who had a statutory right to proceed against the insurer if the insured failed to satisfy a final judgment within 30 days. Maryland Casualty, 312 U.S. at 274, 61 S.Ct. at 513 (emphasis added). Even though

7

judgment had not been entered in the underlying case, case or controversy existed because the injured person could bring an action directly against the insured under Ohio law.   Id.

The same exact scenario applies in Georgia, where a third-party claimant gains rights under a liability policy following entry of judgment in its favor, and against the insured.   Once the claimant is a creditor of the insured, it can proceed against the policy as an asset of the insured.   See Smith v. GEICO, 179 Ga. App. 654, 655, 347 S.E.2d 245, 246 (1986) ("[w]hen a judgment has been obtained against the insured which fixes the liability of the insured, an action may be maintained directly against the insurer for the proceeds of the policy"); Commercial Union Insurance Company v. Bradley Company, 186 Ga. App. 610, 367 S.E.2d 820 (1988)(judgment creditor is entitled to bring a direct action against debtor 's insurer); Arnold v. Walton, 205 Ga. 606, 54 S.E.2d 424 (1994)(judgment creditor has direct cause of action against debtor's insurer resulting from unsatisfied judgment against the insured).[1]

---

[1] Turner and Laurinaitis acknowledge the right of an injured party to bring an action against the insurer on pages 14 through 15 of their brief citing Bacon v. Liberty Mutual Insurance Company, 198 Ga. App. 436, 401 S.E.2d 625 (1991); Insured Lloyds v. Bobo, 116 Ga. App. 89, 156 S.E.2d 518 (1967); Edmond v. Continental Insurance Company, 249 Ga. App. 338, 548 S.E.2d 450 (2001).

The Maryland Casualty holding clearly conveys jurisdiction in this case. Indeed, the Supreme Court of the United States unambiguously held that when an injured party has a direct cause of action against an insurer, as under Georgia law, there is an "actual controversy," not only between the insured and insurer, but also between the insurer and injured party.

There have been many cases decided since Maryland Casualty which likewise illustrate the clear grounds for this Court's ongoing jurisdiction over the instant declaratory judgment action. See Federal Kemper Insurance Company v. Rauscher, 807 F.2d 345 (3rd Cir. 1986)(injured parties were "indispensable" to declaratory judgment action brought by insurer and, thus, had standing to defend the action, even though default judgment had been entered against insured); Vermont Mutual Insurance Company v. Everett, 875 F.Supp. 1181 (E.D. Va. 1995)(case or controversy between liability insurer and injured victim remained in declaratory judgment action after default judgment against insureds; Virginia statute allows injured third party to bring direct action against insurer when injured third party has obtained judgment against insured and judgment remains unsatisfied); Allstate Insurance Company v. J.J.M., 254 Mich. App. 418, 657 N.W.2d 181 (2003)(case or controversy for declaratory judgment action remains after default judgment

9

entered against insured when action was brought against the insured as well as injured party).

The foregoing cases are analogous to the instant action and illustrate the jurisdictional grounds outlined in Maryland Casualty. When the injured party has a direct right of action against an insurer through operation of state law, a case or controversy for a declaratory judgment action will remain despite even a default judgment entered against the insureds in that same action. In the present case, there has been nothing as final as default judgment entered, merely the insureds' contradictory and confusing actions, specifically: requesting that TIG provide coverage for the underlying lawsuit twice, entering into a reservation of rights agreement with TIG to that effect, then withdrawing a request for coverage when the instant action was filed. As the above case law mandates, these actions, much less definitive that a default judgment, simply do not divest the Court of jurisdiction in this matter.

The cases cited by Turner and Laurinaitis do not question this Court's jurisdiction; to the contrary, their holdings reinforce that a case or controversy exists. In Cross v. Occidental Fire and Casualty Company, 347 F.Supp. 342 (W.D. Okl. 1972), for example, the court recognized the existence of a case or controversy in cases where the insurer instigates the

declaratory judgment action citing to <u>Maryland Casualty</u>, *supra*. In fact, the <u>Cross</u> court provides the basis for its own inapplicability to the instant action. In <u>Cross</u> the *injured party* brought the declaratory judgment action, as opposed to the *insurer*, rendering its holding irrelevant to the instant action. As the <u>Cross</u> court held:

> Plaintiff argues that if an insurance company may sue before conclusion or even initiation of the State Court action and join therein the injured parties, such as Plaintiff, as was done in Maryland Casualty Co. v. Pacific Coal & Oil Co., *supra,* and countless others, then "surely" the reverse must be permitted. <u>There is good reason for permitting the joinder of persons in Plaintiff's position by an insurer seeking declaratory relief. If they were not joined they would not be bound by a favorable judgment of noncoverage and the insurers could be exposed to the risks of a multiplicity of litigation and inconsistent obligations. No such factors are present in the case conceived by Plaintiff and brought here.</u>

<u>Cross</u>, 347 F.Supp. at 343 (emphasis added).

The additional cases cited by Turner and Laurinaitis are likewise distinguishable because the party bringing the action was the *injured party*. See <u>Hunt v. State Farm Mutual Automobile Insurance Company</u>, 655 F. Supp. 284 (D. Nev. 1987)(cases in which the insurer brings the declaratory judgment action "are distinguishable from the present case. In them, there is a real and immediate controversy concerning the insurance company's

obligations to the insured vis-a-vis the underlying personal injury action"); McMillan-Bloedel, Inc. v. Fireman's Insurance Company of Newark, New Jersey, 558 F.Supp. 596 (S.D. Ala. 1983) (*injured party* does not have standing to bring declaratory judgment action; remedy lies in direct action after judgment entered).

Turner and Laurinaitis also cite to Cincinnati Insurance Company v. Franck, 621 N.W.2d 270 (Minn. App. 2001) as the sole case where the declaratory judgment action was in fact brought by an insurer, albeit an excess carrier. Their reliance on Franck is nonetheless misplaced. In fact, it was the insurer's failure in Franck to join necessary parties, namely the insureds and the primary carrier, in addition to the injured party, that proved fatal to their action. Franck, 621 N.W.2d at 274-275. If anything, the Franck case provides additional support for keeping the Turner Defendants and Laurinaitis as parties to the present action. As the court in Franck ultimately held, "[t]he umbrella insurer's declaratory-judgment action against the injured party did not present a justiciable controversy because neither the insureds nor the primary insurer were parties to the declaratory action[.]" Franck, 621 N.W.2d at 275.

## CONCLUSION

In sum, Turner and Laurinaitis entered into a reservation of rights agreement wherein TIG would defend the underlying action and which included in its terms the ability of TIG to litigate coverage. TIG exercised that right, naming not only Turner and Laurinaitis in this action, but the injured party, Eudy, as well. As the total of relevant case law holds, the Turner Defendants' and Laurinaitis' breach of that agreement does not effect this Court's jurisdiction as a case or controversy exists not only between TIG and the Turner Defendants and Laurinaitis, but also between an Eudy and TIG because Eudy has a right to proceed against the TIG. See Maryland Casualty, *supra.*; GEICO, *supra.*

Turner and Laurinaitis cannot simply opt in and out of their request for coverage to TIG in an attempt to control when and to what extent TIG may invoke this Court's declaratory judgment jurisdiction. The overwhelming case law provides that jurisdiction remains such that the pending motion must be denied.

<signature on following page>

13

Respectfully submitted,

FREEMAN MATHIS & GARY, LLP

Philip W. Savrin
Georgia Bar No. 627836
Kelley R. Purdie
Georgia Bar No. 589984

100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
770/818-0000 (telephone)
770/937-9960 (facsimile)
L:\.....\3999\39763\KRP1540.DOC

14

## CERTIFICATION OF FONT AND POINT SELECTIONS

The undersigned hereby certifies pursuant to LR 7.1, N.D. Ga., that this BRIEF IN OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS UNIVERSAL WRESTLING CORP. INC. f/k/a WORLD CHAMPIONSHIP WRESTLING, INC., TURNER SPORTS, INC., TURNER ENTERTAINMENT GROUP, INC. AND JOHNNY LAURINAITIS was prepared using Courier New (12 point) in compliance with the type and point restrictions set out in LR 5.1B.

This 20th day of January, 2004.

FREEMAN MATHIS & GARY, LLP

Kelley R. Purdie
Georgia Bar No. 589984



May 7, 2003

**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

David Vigilante, Esq.
Turner Broadcasting System
CNN Center, Box 105573
Atlanta, Georgia 30348-5773

Johnny Laurinaitis
c/o Bradley S. Small, Esq.
Manatt Phelps & Phillips, LLP
11355 West Olympic Boulevard
Los Angeles, California 90064

> **Re:**   **Sidney R. Eudy v. Universal Wrestling Company Inc., et al.**
> **Superior Court of Fulton County, Civil Action Number 02CV48513**
> **TIG Claim Number B02009680**
> **TIG Policy Number T7 0003796479902**

Dear Sirs:

TIG Insurance Company has reviewed the above referenced lawsuit for coverage. After reviewing the allegations in light of the Commercial General Liability ("CGL") insurance policy referenced below, and after conducting an independent investigation of the facts, TIG has determined that coverage may be lacking for the claims asserted by Mr. Eudy. TIG is therefore willing to defend WCW and Laurinaitis under a reservation of rights to deny coverage, including a withdrawal of the defense at any time. This letter sets forth TIG's potential coverage defenses and its reasoning and analysis of the relevant concerns.

In making its determinations, TIG has based its evaluation on the allegations asserted in Mr. Eudy's complaint and Second Amended Complaint. No other pleading(s) setting forth Mr. Eudy's assertions have been furnished to TIG, as required by the notice provisions of the policy. If there are any additional documents you wish TIG to review, please forward immediately for review. TIG does not base its decision on the truth of the matters asserted by Mr. Eudy, and acknowledges that his factual assertions may be inaccurate, false, or embellished.

## UNDERLYING FACTS

Eudy alleges that he entered into a contract with World Championship Wrestling, Inc. ("WCW") to perform as a professional wrestler for the period June 9, 1999 through June 8, 2002. He contends that he was required to wrestle even after being injured in the

EXHIBIT
A

*May 7, 2003*
2

early part of 2000, and relieved of his contractual obligations for several appearances. He further claims he was required to jump, over his objection, from the top ropes of the ring. He sustained a compound fracture to his left leg during the maneuver, which caused his bones to protrude through his boot in an event that was aired live on the national television.

Eudy claims WCW (as the predecessor organization of UCW) proceeded to broadcast the incident repeatedly to boost its own ratings and earnings. Eudy contends also that WCW televised one of Eudy's doctors describing his injury and treatment, thereby sharing his confidential medical information with the general public to further increase its ratings and profitability. He also claims WCW cut his pay in half, tampered with his insurance benefits, and ultimately terminated his contract.

In his original complaint, Eudy sought to recover for "breach of contract," "breach of fiduciary duty," and "unjust enrichment." TIG denied coverage for these claims under the CGL policy on the basis that the complaint did not seek recovery of covered damages. TIG has, however, paid Eudy's medical bills pursuant to a separate workers' compensation policy issued by TIG to WCW.

Eudy has since filed a Second Amended Complaint adding Johnny Laurinaitis as a defendant and adding claims for "negligence," "negligent retention," "negligent infliction of emotional distress," and "tortious interference with contractual relations." The Second Amended Complaint relies on the same statement of facts as the original complaint.

TIG has conducted an independent investigation into some of the facts of Eudy's claims, as necessary to assess its coverage obligations. In that regard, TIG has learned that Mr. Laurinaitis was an employee of WCW. Further, TIG has independently requested and reviewed Eudy's contract with WCW. Although the document refers to Eudy as an "independent contractor," it specifically calls for workers' compensation benefits to be available as the exclusive remedy. Coupled with the degree of control WCW exercised over Eudy's work, TIG believes a court would deem Eudy to be an employee, as addressed further herein.

With this overview of the pertinent facts in mind, we will now address the policy provisions at issue.

## CGL POLICY

TIG has analyzed its coverage obligations pursuant to a CGL policy issued to WCW as named insured. The CGL policy bears policy number T7 0003796479902 and covers the period April 1, 2000 to April 1, 2001. As addressed in TIG's previous correspondence of May 22, 2002, this policy covers certain third-party liabilities within the terms of the agreement.

*May 7, 2003*
*3*

As addressed in TIG's disclaimer letter of May 22, 2002, the CGL policy covers sums that the insured becomes legally obligated to pay for bodily injury, property damage, advertising injury or personal injury. TIG has denied coverage for the claims in his original complaint because those claims did not seek to recover covered damages.

In his Second Amended Complaint, however, Eudy has added claims for negligence, negligent retention, negligent infliction of emotional distress and tortious interference with contractual relations. Although Eudy does not seek compensation for his physical injuries, some of his amended claims could be based on emotional distress that he claims to have sustained as a result of his fall. By endorsement, "bodily injury" is defined as including emotional distress. Therefore, a possibility exists that Eudy's new claims may meet the bodily injury definition.

Notwithstanding this possibility, TIG questions whether there is coverage based on its independent assessment that Eudy was an employee of WCW, and not an independent contractor. Significantly, the policy excludes coverage for bodily injury to "an employee of the insured arising out of and in the course of: (a) Employment by the insured; or (b) Performing duties related to the conduct of the insured's business." Similarly, the policy contains an Employment-Related Practices Exclusion that excludes coverage by an individual "arising out of any: (a) Refusal to employ that person; (b) Termination of that person's employment; or (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person." This language may prevent coverage from being afforded for the claims asserted by Eudy.

Likewise, coverage may not exist under the policy for the claims asserted against Mr. Laurinaitis. Although WCW's employees are insured "for acts within the scope of their employment by [WCW] or while performing duties related to the conduct of [WCW's] business," they are expressly outside the definition of an insured for injuries to a "co-employee." TIG's independent investigation reveals that Mr. Laurinaitis is a WCW employee; consequently, he may not meet the definition of an insured for purposes of Eudy's claims under the policy.

## CONCLUSION

Based on the foregoing analysis, TIG seriously questions whether coverage exists under the CGL policy for the claims asserted by Eudy. TIG is continuing its investigation of this matter, and reserves the right to deny coverage at any time. In addition to paying for the post-tender defense of the Second Amended Complaint, TIG may participate in settlement negotiations, contribute to a settlement, contribute to payment of a judgment, post an appeal bond or undertake other actions to bring the claim to a close, all subject to the express understanding that TIG reserves all of its rights to deny coverage as set forth herein. TIG's defense under a reservation of rights is expressly conditioned on its right to file a declaratory judgment to determine its coverage obligations, including but not limited to the question of Eudy's status as an employee of WCW

*May 7, 2003*
*4*

No action by TIG or any agent, lawyer or representative thereof in investigating, adjusting or compromising the claim should be considered as an estoppel or waiver of TIG's right to deny coverage. You have the right, at your own expense, to retain an attorney to defend this claim. Should you decide to do so, TIG will cooperate with any such counsel to the extent that it is reasonably possible. Also, if you have not already done so, all other insurers should be put on notice given the possibility of coverage not existing under TIG's policy, as well as the policy limits applicable to the claim.

If you believe that additional policies should apply or TIG has misinterpreted the material facts or relevant insurance policy provisions, please inform the undersigned immediately so the matter can be brought to a conclusion. Nothing stated herein relieves defendants of their responsibility to keep TIG informed of any additions or amendments to the claim consistent with the reporting requirements of the policy of insurance issued by TIG.

By mentioning certain provisions in this letter, TIG does not imply that no other policy provisions or laws may impact the coverage analysis in this case. TIG expressly reserves the right to rely upon any condition, provision or exclusion in the policy that may limit or preclude coverage, whether those terms are discussed in this letter or not.

**TIG Insurance Company**

Joan Morales

cc:    Bill O'Neill
       Lance Brenn
       Philip W. Savrin, Esq.

JAS7770
3999.59763

4

# FREEMAN MATHIS & GARY

## A LIMITED LIABILITY PARTNERSHIP

Attorneys at Law

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948

Telephone: 770.818.0000
Facsimile: 770.937.9960

www.fmglaw.com

PHILIP W. SAVRIN
PARTNER

Writer's Direct Access
770.818.1405
psavrin@fmglaw.com

November 18, 2003

**VIA FACSIMILE**

Mark Dietrichs, Esq.
Swift, Currie, McGee & Hiers, LLP
1355 Peachtree Street, N.E.
Suite 300
Atlanta, Georgia 30309

> **Re:** **TIG Insurance Company v. Universal Wrestling Corp., Inc., et al.**
> **United States District Court, Northern District, Atlanta Division**
> **Civil Action File No.: 1:03-CV-2096**

Dear Mark:

I have reviewed your correspondence concerning the court's jurisdiction to hear TIG's declaratory judgment claim. While you indicate that courts around the country would find no jurisdiction where the insured has offered to withdraw its claim for coverage, you have not provided me with any case citations, let alone binding decisions in Georgia. I am writing, nevertheless, to set forth my analysis to avoid what I believe would be an unnecessary and unfruitful motion to dismiss, as contemplated by your letters.

Let me begin with the axiomatic statement that declaratory judgment jurisdiction exists if there is a case or controversy to be resolved. Here, following notice of Mr. Eudy's lawsuit, TIG entered into a reservation of rights agreement with your clients to provide a defense. That agreement was accepted by your clients and remains in force to this day, and certainly at the time the complaint was filed, which is the operative time frame. I do not believe insureds can renege on a reservation agreement, let alone on terms they unilaterally dictate. In and of itself, this would support the court's subject matter jurisdiction.

Further, Mr. Laurinaitis claims benefits, not as a named insured, but as an additional insured. Given that status, it is not clear whether TIG would have an obligation to defend and indemnify his interests – assuming coverage exists – regardless of the preferences of the named



EXHIBIT
B

FREEMAN MATHIS & GARY
A LIMITED LIABILITY PARTNERSHIP

Mark Dietrichs, Esq.
November 18, 2003
Page 2

insured.  This is a factor that, in my mind, would further support the court's exercise of jurisdiction.

Perhaps most importantly, though, Mr. Eudy may have direct rights against TIG, if the defendants become legally obligated to pay damages, be it by entry of judgment or settlement. Given that exposure, (which you agree exists, albeit contingent), a case or controversy would appear to exist.  Indeed, it is because of claimants' peculiar rights to third party liability claims that TIG named Eudy in its declaratory judgment action so he would be legally bound by the result thereof.

For all these reasons, I believe the insureds' coverage demands have been carried too far to now deprive TIG of its right to litigate its obligations through a declaratory judgment case. However, I have a suggestion.

In our discussions, to which Mr. Eudy's counsel has not been privy until now, your clients have balked at indemnifying TIG for any direct action by Mr. Eudy, for "business reasons" which have not been disclosed to me.  On behalf of TIG, however, I have focused on legal reasons.  If Mr. Eudy were to join the release and dismissal with prejudice of TIG, given that he is already a party to the declaratory judgment action, our impasse might be solved globally.

I have taken the liberty adding Mr. Eudy's name to the proposed release, in the hopes of of avoiding unnecessary litigation, if coverage will truly no longer be sought from TIG for this matter.  To that end, I look forward to hearing from Mr. Weizenecker as soon as possible.

Best regards.

Very truly yours,

FREEMAN MATHIS & GARY, LLP

Philip W. Savrin

Philip W. Savrin

PWS/dms
Enclosure
cc:    Stephen G. Weizenecker, Esq. (via facsimile)
       Joan Morales (Claim No. B02009680 ) (via e-mail)
       Kelley R. Purdie, Esq. (via e-mail)

DS2356/3999.39763

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the within and foregoing PLAINTIFF TIG INSURANCE COMPANY'S BRIEF IN OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS UNIVERSAL WRESTLING CORP., INC. f/k/a WORLD CHAMPIONSHIP WRESTLING, INC., TURNER SPORTS, INC., TURNER ENTERTAINMENT GROUP, INC. AND JOHNNY LAURINAITIS by depositing same in the United States mail, with sufficient postage affixed thereon, to counsel of record listed below:

Mark Dietrichs, Esq.
Swift, Currie, McGee & Hiers, LLP
1355 Peachtree Street, N.E., Suite 300
Atlanta, Georgia 30309

Stephen G. Weizenecker, Esq.
Weizenecker Rose Mottern & Fisher, P.C.
1800 Peachtree Street, N.W., Suite 260
Atlanta, GA 30309

This 20th day of January, 2004.

Kelley R. Purdie
Georgia Bar No. 589984

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
Suite 1600
Atlanta, GA 30339
770/818-0000 (telephone)
770/937-9960 (facsimile)